**HYSTER COMPANY, a corporation, Plaintiff-Appellee,**

v.

**INDEPENDENT TOWING AND LIFT-ING MACHINE ASSOCIATION et al., Defendants-Appellants.**

**HYSTER COMPANY, a corporation, Plaintiff-Appellee,**

v.

**EMPLOYEES ASSOCIATION OF KEWANEE et al., Defendants-Appellants.**

Nos. 75–1066, 75–1068.

United States Court of Appeals, Seventh Circuit.

Argued May 28, 1975.

Decided July 7, 1975.

---

15. See footnote 2, *supra.*

William A. Widmer, III, Chicago, Ill., for defendants-appellants.

Verne W. Newcomb and James B. Ruyle, Portland, Or., for plaintiff-appellee.

Before TUTTLE, Senior Circuit Judge,* and TONE and BAUER, Circuit Judges.

TONE, Circuit Judge.

These consolidated appeals are from two related orders enjoining the defendant unions and their members from engaging in work stoppages which resulted from refusals to cross a stranger union's picket lines. The issues in each appeal is whether the conduct enjoined gave rise to an arbitrable issue under the collective bargaining agreement between the union and the plaintiff employer, and therefore fell within the exception to the anti-injunction provision of the Norris-LaGuardia Act established by *Boys Markets, Inc.* v. *Retail Clerks Union,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). We hold that the *Boys Markets* exception does not apply and therefore reverse the orders of the District Court.

Plaintiff Hyster Company, which is engaged in the manufacture and sale of industrial trucks and construction equipment, has plants in Peoria, Kewanee, and Danville, Illinois. The hourly employees at the Peoria plant are represented by defendant Independent Towing and Lifting Machine Association. Another union, the defendant Employees Association of Kewanee, represents the shop and office employees at the Kewanee plant. The employees at the Danville plant are represented by still another independent union which is not a party to these proceedings, but whose picketing led to the dispute in issue here.

Each of the defendant unions is a party to a separate collective bargaining agreement with the plaintiff. The agreements contain similar arbitration and no-strike provisions, the pertinent details of which will be described later.

When the collective bargaining agreement between plaintiff and the independent union at the Danville plant expired, the employees at that plant went out on strike and picketed plaintiff's Peoria and Kewanee plants. The Peoria and Kewanee unions and their employees honored the picket lines. Plaintiff then filed separate actions under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, against the Peoria and Kewanee unions and their officers and agents to enjoin the work stoppages. The District Court entered temporary injunctions on the basis of affidavits and, following a hearing, entered preliminary injunction orders enjoining the defendants from engaging in the work stoppages. These appeals followed.

Two recent opinions of this court are pertinent. The company relies on *Inland Steel Co.* v. *Local Union No. 1545, United Mine Workers of America,* 505 F.2d 293 (7th Cir. 1974). Defendants rely on *Gary Hobart Water Corp.* v. *N.L.R.B.,* 511 F.2d 284 (7th Cir. 1975), in which the court distinguished *Inland Steel* on the basis of the differing language of the arbitration clauses in the two cases. In

---

* Senior United States Circuit Judge Elbert Parr Tuttle of the United States Court of Appeals for the Fifth Circuit is sitting by designation.

*Inland Steel,* the issue of a sympathy strike was held by a divided court to be within the scope of the "exceptionally broad" (505 F.2d at 298) arbitration clause of the bargaining agreement,[1] which covered, not only (1) "differences . . . as to the meaning and application of the provisions of this agreement," but also (2) "differences . . . about matters not specifically mentioned in this agreement" and (3) "any local trouble of any kind . . . at the time." (505 F.2d at 297, n.5.) Thus, although the contract did not contain a no-strike clause, one was implied on the authority of *Gateway Coal Co. v. Mine Workers,* 414 U.S. 368, 380–384, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974), and the judgment of the district court granting the injunctions was affirmed.

In contrast, in *Gary Hobart,* the arbitration clause applied only to "any and all disputes and controversies arising under or in connection with the terms or provisions" of the bargaining agreement, and, as the court specifically noted (511 F.2d at 288), did not contain provisions comparable to those in the *Inland Steel* arbitration clause which are designated (2) and (3) in the preceding paragraph. The court concluded that the "no-strike" clause of the contract, although it stated that "there shall be no lockouts by the Company and there shall be no strike, stoppages of work or any other form of interference with any of the production or other operations of the Company by the Union or its members," did not constitute a waiver by the Union or the employees of "their right to engage in a sympathy strike." (511 F.2d at 287, 288.) The court summarized its holding as follows:

"The refusal to dishonor another local union's picket line or engaging in a

sympathy strike in connection with another local's strike are not disputes or controversies arising under or in connection with the first local union's agreement and are therefore neither arbitrable nor subject to the no-strike provision." 511 F.2d at 288.[2]

The arbitrability issue in *Gary Hobart* arose in the context of an unfair labor practice proceeding, but it was nevertheless determined by the language of the arbitration clause, as was the determination of that issue in *Inland Steel,* and the court in the *Gary Hobart* opinion treated *Inland Steel* as being applicable precedent unless it was distinguishable.

In the instant case, the grievance and arbitration procedures of the two collective bargaining agreements in question are substantially the same and apply, in the language of the Peoria contract, to "[a]ll differences, disputes, or controversies which arise between the Union, the Company or any employee covered by this Agreement and the Company." The agreements also contain "no-strike" clauses, of which the Peoria language is representative:

"The Union will not authorize, sanction, condone, promote or instigate any strike, work stoppage, sit-down, slow down, picketing or curtailment of work or interference with the efficient operation of the Company's plant or premises during the term of this Agreement."

▮▮▮ Absent from the arbitration clauses in this case are any provisions comparable to the "differences . . . about matters not specifically mentioned in this agreement" and the "any local trouble of any kind . . . at the mine" provisions of the *Inland Steel* arbitration clause. Although the defini-

1. The agreement in issue was the National Bituminous Coal Wage Agreement of 1971. Identical language of the predecessor 1968 agreement was before the Supreme Court in *Gateway Coal Co. v. Mine Workers,* 414 U.S. 368, 374–376, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974).

2. Accord, *Amstar Corp. v. Amalgamated Meat Cutters & B. Workmen,* 468 F.2d 1372, 1373

(5th Cir. 1972). *Contra: NAPA Pittsburgh, Inc. v. Automotive Chauffeurs, Local 926,* 502 F.2d 321, 324 (3d Cir. 1974) (Judge Hunter dissenting in a dissent relied upon by Judge Fairchild in his dissent in *Inland Steel,* 505 F.2d at 301); *Monongahela Power Co. v. Local No. 2332, IBEW,* 484 F.2d 1209 (4th Cir. 1973); and *cf. Northwest Airlines, Inc. v. Air Lines Pilots Ass'n,* 442 F.2d 251 (8th Cir. 1971).

tions before us (disputes "which arise between the Union, the Company or any employee covered by this Agreement and the Company") lack the specific limiting language present in *Gary Hobart*, they are closer to the definition in that case than to the one in *Inland Steel*. We recognize of course the presumption in favor of arbitrability. *Gateway Coal Coal Co.* v. *Mine Workers, supra*, 414 U.S. at 377–380, 94 S.Ct. 629. But there are also present not only the competing Norris-LaGuardia Act policy against labor injunctions, to which *Boys Markets* creates a very limited exception, but also the fact that the work stoppage "was not 'over a grievance' which the parties were contractually bound to arbitrate" but rather "itself precipitated the dispute." *Cf. Amstar Corp.* v. *Amalgamated Meat Cutters & B. Workmen*, 468 F.2d 1372, 1373 (5th Cir. 1972), and Judge Fairchild's dissent in *Inland Steel*, with which compare the majority's reference to *Amstar* in *Inland Steel*, 505 F.2d at 299. Moreover, the waiver of a collective bargaining right must be in "clear and unmistakable language." *Gary Hobart Water Corp.* v. *N.L.R.B., supra*, 511 F.2d at 287, quoting from *N.L.R.B.* v. *Wisconsin Aluminum Foundry Co.*, 440 F.2d 393, 399 (7th Cir. 1971) (which in turn takes the phrase from a line of Sixth Circuit cases, including *Beacon Journal Publishing Co.* v. *N.L.R.B.*, 401 F.2d 366, 367 (6th Cir. 1968)). We are unable to find in the agreements before us that which *Gary Hobart* holds is essential if a union and its members are to be denied the right to honor a stranger union's picket lines and thereby engage in a sympathy strike, *viz.*, "clear and unmistakable language waiving [the] right to engage in such a strike." (511 F.2d at 287, 288.) Since there was no waiver and the dispute was not arbitrable, a *Boys Markets* injunction could not properly be issued.

Plaintiff's attempts to distinguish *Gary Hobart*, are without substance. We have already observed that, although *Gary Hobart* was an unfair labor practice proceeding, the court in that case recognized the applicability of *Inland Steel* and distinguished that case solely on the basis of the different language of the arbitration clauses in the two cases. Nor can *Gary Hobart* be distinguished on the ground that the union, as distinguished from the employees, did not participate in the work stoppage in that case. Although the opinion does not set forth the union's role in the work stoppage, no point of any distinction between the union and its employees is made by the court in distinguishing *Inland Steel*. Finally, the statement by the court in *Gary Hobart* of additional grounds which would have required the same result if the agreement had made the honoring of a stranger union's picket lines and sympathy strikes arbitrable is not a basis for distinction, for "where a decision rests on two or more grounds, none can be relegated to the category of *obiter dictum*." *Woods* v. *Interstate Realty Co.*, 337 U.S. 535, 537, 69 S.Ct. 1235, 1237, 95 L.Ed. 1524 (1949).

In view of our holding that the *Boys Markets* exception does not apply, we need not reach defendants' contention that even if the *Boys Markets* exception were applicable, the procedural requirements of section 7 of the Norris-LaGuardia Act (29 U.S.C. § 107), including verification of the complaint, adequate notice to all defendants, and establishment of all the elements of plaintiff's case by testimony in open court, must be, but were not, complied with. Nor need we reach other points urged by defendants.

The orders appealed from are reversed and the cases are remanded with directions to dismiss the actions.[3]

Reversed and remanded.

---

**3.** This opinion has been circulated among all judges of this court in regular active service, in view of the possible inconsistency between our holding and those of certain other circuits. See note 2, *supra*. A majority voted not to rehear the case in banc.