

James J. McEldrew, Philadelphia, Pa. (Cole, McEldrew, Hanamirian & McWilliams, Philadelphia, Pa., on the brief), for appellants.

Robert M. Ross, Richter, Syken, Ross, Binder & O'Neill, Philadelphia, Pa. (B. Nathaniel Richter, Philadelphia, Pa., on the brief), for appellee Lipshutz.

Joseph G. Manta, LaBrum & Doak, Philadelphia, Pa. (Daniel J. Ryan, Philadelphia, Pa., on the brief), for appellee Stoutenburgh.

Before SEITZ and ALDISERT, Circuit Judges, and LATCHUM, District Judge.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Nancy M. Sherman, Atty., N. L.R.B., Washington, D. C., Harold A. Boire, Director, Region 12, N.L.R.B., Tampa, Fla., for petitioner.

Robert F. Houlihan, Lexington, Ky., for respondent.

Before GOLDBERG, DYER and CARSWELL, Circuit Judges.

GOLDBERG, Circuit Judge:

The National Labor Relations Board here seeks enforcement of an order issued against Southern Greyhound Lines, Inc. Our basic problem revolves around the discharge of a conscientious confidential secretary with scruples against crossing a picket line. The difficulties which later culminated in the order began in March, 1967. The company was then engaged in negotiations with a union representing the porters, maids and janitors. Efforts to reach an agreement failed, the union called a strike, and on March 31 a picket line was set up around the Greyhound Lines' Miami terminal. Mrs. Virginia Anderson, the charging party herein, was the terminal manager's confidential secretary and as such was prohibited from membership in the union representing the other office workers. She, of course, was not a member of the striking union. Despite her lack of union membership, Mrs. Anderson refused to cross the picket line around the Miami terminal, stating that to do so would be against her principles. When Mrs. Anderson informed the manager of her intention not to cross the picket line, he discharged her "for failing to report for work as ordered." On April 21, Mrs. Anderson filed an unfair labor practice charge, asserting that the company had unlawfully terminated her employment on March 31 and had since refused to reinstate her.

The National Labor Relations Board held that Mrs. Anderson's refusal to cross the picket line was a protected activity and that her discharge was a violation of § 8(a) (1) of the National Labor Relations Act, 29 U.S.C.A. § 158(a) (1). The Board therefore ordered the company to offer Mrs. Anderson reinstatement and further ordered that she be paid back pay from the date the strike terminated until the company offered her reinstatement. The company resists compliance with the Board's order, asserting that it had a right to terminate Mrs. Anderson's employment because she was not engaged in a protected activity. Moreover, the company alleges that the back pay award was unjustified even if Mrs. Anderson's discharge was unlawful because she never offered unconditionally to return to work.

The relative rights and duties of an employee who refuses to cross a picket line and his employer who would require such a crossing as a condition of continued employment have been considered and settled with conflicting results in other circuits. Compare NLRB v. L. G. Everist, Inc., 8 Cir. 1964, 334 F.2d 312 and NLRB v. Illinois Bell Telephone Co.,

7 Cir. 1951, 189 F.2d 124, cert. denied, 342 U.S. 885, 72 S.Ct. 173, 96 L.Ed. 663, with NLRB v. John Stepp's Friendly Ford, Inc., 9 Cir. 1964, 338 F.2d 833, Truck Drivers Union Local No. 413, etc. v. NLRB, D.C. Cir. 1964, 334 F.2d 539, and NLRB v. West Coast Casket Co., 9 Cir. 1953, 205 F.2d 902. In this circuit we have encountered parts of the problem, but we have never considered the problem in the wholistic form here presented. In NLRB v. Montag Bros., Inc. 5 Cir. 1944, 140 F.2d 730 this court affirmed without discussion a Board finding that it was an unfair labor practice to discharge non-union employees who had refused to cross a picket line at their employer's place of business. However, we did not there consider or discuss the basis of this protection or any right an employer might have to replace such an employee for legitimate business purposes. Later in NLRB v. Cone Brothers Contracting Company, 5 Cir. 1963, 317 F.2d 3, cert. denied, 375 U.S. 945, 84 S.Ct. 353, 11 L.Ed.2d 275, this court clearly implied that the employer may have some right to dismiss an employee who refuses to cross a picket line if dismissal is necessary "to preserve the efficient operation of an employer's business." 317 F.2d at 8. In *Cone*, however, we did not discuss the character or the extent of either the employee's or the employer's privileges in this area. We thus approach this problem knowing that this court in *Montag* recognized an employee's privilege to refuse to cross a picket line and in *Cone* recognized an employer's privilege in the same situation to preserve his business operations, but in neither case did we define the basis or the extent of these privileges. The question before us is therefore one of the balance to be struck between these two competing interests.

 Initially, we think it obvious that when an employee, as a matter of principle, refuses to cross a picket line at his own employer's place of business, the employee, even though he is not a member of the striking union, has in effect plighted his troth with the strikers, joined in their common cause, and has thus become a striker himself. Teamsters Local No. 413 v. NLRB, *supra*; NLRB v. West Coast Casket Co., *supra*. The basis of the protection against discharge afforded an employee who refuses to cross a picket line at his employer's business is his status as a striker. Such an employee is therefore entitled to all the protections due under the National Labor Relations Act to those strikers with whom he has joined cause. Conversely, the employer's right to discipline such an employee to preserve the operation of his business is limited to those measures which he could lawfully use against the strikers.

In the instant case Mrs. Anderson refused to cross a picket line established by the Amalgamated Transit Union, AFL–CIO–CLC representing the porters, maids and janitors, which was at that time engaged in a lawful economic strike against the company. She thus became an economic striker. Though Mrs. Anderson was not a member of that union and because of her confidential position could not be a member of the Office and Professional Employees International Union, AFL-CIO, which represented the other office workers and secretaries, she was not deprived of the protections furnished an employee under the National Labor Relations Act. NLRB v. Poultrymen's Service Corp., 3 Cir. 1943, 138 F.2d 204. Mrs. Anderson therefore was entitled to all of the protection due an economic striker, and the company had the correlative privilege to use those measures which under the National Labor Relations Act it could lawfully employ against economic strikers in order to continue its business operations.

 The respective rights of an economic striker and his employer were carefully surveyed by the Supreme Court in NLRB v. Fleetwood Trailer Co., Inc., 1967, 389 U.S. 375, 88 S.Ct.

543, 19 L.Ed.2d 614, where the Court said in relation to economic strikers:

> "Section 2(3) of the Act (61 Stat. 137, 29 U.S.C. § 152(3)) provides that an individual whose work has ceased as a consequence of a labor dispute continues to be an employee if he has not obtained regular and substantially equivalent employment. If, after conclusion of the strike, the employer refuses to reinstate striking employees, the effect is to discourage employees from exercising their rights to organize and to strike guaranteed by §§ 7 and 13 of the Act (61 Stat. 140 and 151, 29 U.S.C. §§ 157 and 163). Under §§ 8(a) (1) and (3) (29 U.S.C. §§ 158(a) (1) and 3)) it is an unfair labor practice to interfere with the exercise of these rights. Accordingly, unless the employer who refuses to reinstate strikers can show that his action was due to 'legitimate and substantial business justifications,' he is guilty of an unfair labor practice. NLRB v. Great Dane Trailers, 388 U. S. 26, 34, 1035, 87 S.Ct. 1792, 1798, 18 L.Ed.2d 1027 (1967). The burden of proving justification is on the employer. * * *" 389 U.S. at 378, 88 S.Ct. at 545.

It follows, therefore, that it was an unfair labor practice in the instant case for the company to discharge Mrs. Anderson for participation in an economic strike. She remained an employee under § 2(3) of the Act, 29 U.S.C.A. § 152(3), and was entitled to reinstatement at the termination of the strike unless the company had some substantial and legitimate business justification for denying her continued employment.

One recognized business justification for refusing to reinstate economic strikers occurs when the jobs claimed by the strikers are occupied by workers hired as permanent replacements during the strike in order to continue operations. NLRB v. Mackay Radio & Telegraph Co., 1937, 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381. There may be other justifi-

cations, but we need not here speculate on their nature and boundaries. It is clear that the burden of proving justification is on the employer. NLRB v. Fleetwood Trailer Co., Inc., *supra*. In the instant case the evidence is uncontradicted that Mrs. Anderson had not been permanently replaced at the time the strike was terminated, and the employer has alleged no other justification which we might consider. We therefore hold that Mrs. Anderson had a right to reinstatement at the termination of the strike.

Respondent, however, relying on NLRB v. Rockaway News Supply Co., 1952, 345 U.S. 71, 73 S.Ct. 519, 97 L.Ed. 832, alleges that in the context of an employee's refusal to cross a picket line, the Supreme Court has erased the well established distinction between the discharge of an economic striker—an unlawful action—and the employer's right to permanently replace such an employee —a lawful action. NLRB v. Fleetwood Trailer Co., *supra*. We do not read *Rockaway* as establishing such an all-inclusive principle. In the first place, the Court in *Rockaway* deliberately and unmistakably declined to give its opinion such a sweeping effect, saying:

> "The parties here see the case as requiring decision of sweeping abstract principles as to the respective rights of employer and employee regarding picket lines. But this decision does not, and should not be read to, declare any such principles. The actual controversy here is within a very narrow scope, * * *" 345 U.S. at 75, 73 S.Ct. at 522.

Moreover, the Court's decision in *Rockaway* was based on a no strike, no work stoppage clause in the employee's contract which the employee breached by refusing to cross a picket line. Finally, the picket line which the employee in *Rockaway* refused to cross was not around his own employer's premises but around the plant of a customer where the employee was required to make pickups and deliveries. It was in these cir-

cumstances that the Supreme Court remarked:

> "The distinction between discharge and replacement in this context seems to us as unrealistic and unfounded in law as the Court of Appeals found it." 345 U.S. at 75, 73 S.Ct. at 522.

We quite agree. In *Rockaway* no economic striker, whether he achieved that status by a refusal to cross a picket line or by the more conventional method, would have been engaged in a protected activity since the right to strike had been specifically foresworn in the collective bargaining agreement between the employee's union and the employer. Thus the employer was entitled to discharge the offending employee without regard to whether he had been permanently replaced.

In the instant case there was no such contractual negation of the employee's right to strike; the Court's decision in *Rockaway* is therefore inapplicable here. Furthermore, the Court has subsequently reaffirmed the validity of the distinction between discharge and replacement in the context of a protected economic strike. NLRB v. Fleetwood Trailer, Inc., *supra*. In the circumstances of this case we find that the company's discharge of Mrs. Anderson was an unfair labor practice.

■ Greyhound's next objection to the Board's order involves the back pay award. The company contends that because Mrs. Anderson never unconditionally offered to return to work after her discharge, the Board's award of back pay from the termination of the strike until the company offers her reinstatement is unjustified. We find no merit in this argument.

■ Normally when a back pay award is made due to the employer's failure to reinstate a striker, the Board or the court orders that the back pay commence from the date such an employee unconditionally offers to return to work. See, e.g., J. H. Rutter-Rex Manufacturing Co., Inc. v. NLRB, 5 Cir. 1968, 399 F.2d 356, cert. denied, 393 U.S. 1117, 89 S.Ct. 993, 22 L.Ed.2d 122; NLRB v. Safway Steel Scaffolds Company of Georgia, 5 Cir. 1967, 383 F.2d 273, cert. denied, 390 U.S. 955, 88 S.Ct. 1052, 19 L.Ed.2d 1150; NLRB v. Holcombe, 5 Cir. 1963, 325 F.2d 508. From these authorities the company in the instant case attempts to extract the universal principle that such an offer is the sine qua non of a back pay award. We think there is no such general rule requiring in every case an unconditional offer to return to work before a back pay award is justified.

In the normal strike situation there is no direct communication before or during the strike between the employer and an individual employee concerning the employee's work status. The customary offer to return to work notifies the employer that the strike is over and that the employees are ready to resume work. The time of the offer therefore becomes the appropriate time to commence any back pay award since an employee is not entitled to back pay for the time he was on strike. The entire rationale surrounding the employee's usual offer to return to work is grounded on the fact that the employee was the source of his own disemployment. He refused to work; his employer did not fire him.

■ Here an entirely different situation exists. Mrs. Anderson had been permanently discharged at the beginning of the strike. She therefore had no reason to notify the company at the end of the strike that she was ready to resume work. The company had already notified her that it no longer desired her services. An application for reinstatement would have been a completely useless ritualistic act. It is this distinction which has given rise to the rule that the company itself must affirmatively offer reinstatement to an unlawfully discharged employee, regardless of whether or not the discharged employee makes application for reinstatement. G.P.D. Inc. v. NLRB, 6 Cir. 1969, 406 F.2d 26, n. 6; Bituminous Material & Supply Co. v. NLRB, 8 Cir. 1960, 281 F.2d 365; NLRB v. Cowell Portland Cement Co., 9

Cir. 1945, 148 F.2d 237, cert. denied, 326 U.S. 735, 66 S.Ct. 44, 90 L.Ed. 438; Idaho Potato Growers, Inc. v. NLRB, 9 Cir. 1944, 144 F.2d 295, cert. denied, 323 U.S. 769, 65 S.Ct. 122, 89 L.Ed. 615; New York Handkerchief Mfg. Co. v. NLRB, 7 Cir. 1940, 114 F.2d 144, cert. denied, 311 U.S. 704, 61 S.Ct. 170, 85 L.Ed. 457; NLRB v. Sunshine Mining Co., 9 Cir. 1940, 110 F.2d 780, cert. denied, 312 U.S. 678, 61 S.Ct. 447, 85 L.Ed. 1118. Mrs. Anderson was unlawfully discharged. The company therefore had an affirmative duty to offer her reinstatement, but it did not do so. She was entitled to such an offer at the termination of the strike, and her right to back pay commenced at that time despite the fact that she did not apply for reinstatement.

For the foregoing reasons the order of the Board is enforced.

United States Court of Appeals, Ninth Circuit.