## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## UNION CARBIDE CORPORATION, Respondent.

### No. 14210.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 10, 1970.

Decided Jan. 5, 1971.

As Amended on Denial of Rehearing Feb. 23, 1971.

Albert V. Bryan, Circuit Judge, dissented and filed opinion and also dissent-

ed from the denial of rehearing and filed opinion.

John D. Burgoyne, Atty., N. L. R. B. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Donald W. Savelson, Atty., N. L. R. B., on the brief), for petitioner.

Jack P. Simpson, New York City (David D. Johnson, Jackson, Kelly, Holt & O'Farrell, Charleston, W. Va., on the brief), for respondent.

Before MURRAH*, Senior Circuit Judge, and BRYAN and BUTZNER, Circuit Judges.

MURRAH, Senior Circuit Judge.

This enforcement proceeding involves the relative rights of nonstriking employees who were discharged for refusing to cross a picket line maintained by striking employees of a common employer. The basic facts are not in dispute.

* Of the Tenth Circuit sitting by designation.

Moss, Mullins and Withrow were employed by Union Carbide in the construction division of the Engineering Department and were working at Union Carbide's South Charleston plant when it was struck by the production and maintenance employees who are represented by the International Association of Machinists. The strike was admittedly an economic strike, and picket lines were posted at the plant. Union Carbide decided that the work of the construction division at the South Charleston plant should continue despite the strike, and to implement this decision distributed to the construction division employees a leaflet known as the "Tailgate Message." The clear import of the leaflet was to warn the nonstriking employees that if they failed to report for work they would not receive any wages and would be subject to disciplinary action as in the case of absenteeism. This occurred the day before the strike began. After commencement of the strike, employees who were absent three days were contacted, requested to return to work and warned of possible disciplinary action if they failed to do so; on the fifth day of absence the employees were informed that if they did not return to work by the ninth day they would be discharged. Moss, Mullins and Withrow did not return by the ninth day and were accordingly discharged.

On recommendation of the Hearing Examiner, the Board found that the threatened disciplinary actions and the actual discharges violated Section 8(a) (1) of the National Labor Relations Act, 29 U.S.C. Section 158(a) (1), by interfering with the exercise of employee rights guaranteed by Section 7 of the Act, 29 U.S.C. Section 157. It ordered Union Carbide to offer the employees reinstatement, to make them whole for loss of pay from the termination date of the strike until reinstatement and to post appropriate notices.

■ Union Carbide resists enforcement on two grounds: (1) that Moss, Mullins and Withrow were not engaged in activities protected by Section 7; (2) but even so, that substantial and legitimate business considerations justified the discharges and refusal to rehire the dischargees at the termination of the strike. In support of its first contention, Union Carbide argues that an employee's refusal as a matter of principle to cross a picket line maintained by fellow employees engaged in an economic strike against their common employer is neither concerted action nor protected activity within the meaning of Section 7.

In presently material part, Section 7 guarantees the right of every employee "to form, join, or assist labor organizations * * * and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection. * * *" This circuit has construed this language to mean that for conduct to be protected the purpose of the action must be in furtherance of collective bargaining or other concerted activities for mutual aid or protection. Joanna Cotton Mills Co. v. National Labor Relations Board, 176 F.2d 749 (4th Cir.). And it has been said that nonstriking employees who refuse purely as a matter of principle to cross a picket line have no direct economic stake in the labor dispute and are not engaged in concerted activity for mutual aid or protection. See National Labor Relations Board v. Illinois Bell Telephone Co., 189 F.2d 124 (7th Cir.), cert. denied, 342 U.S. 885, 72 S.Ct. 173, 96 L.Ed. 663. And see also National Labor Relations Board v. L. G. Everist, Inc., 334 F.2d 312 (8th Cir.), where the discharged employees refused to cross a picket line maintained against a third party employer.

But it now seems to be fairly well established by the most recent authority that nonstriking employees who refuse as a matter of principle to cross a picket line maintained by their fellow employees have "plighted [their] troth with the strikers, joined in their common cause, and [have] thus become * * * striker[s] [themselves]." National Labor Relations Board v. Southern Greyhound Lines, 426 F.2d 1299

(5th Cir.). See also National Labor Relations Board v. Difco Laboratories, Inc., 427 F.2d 170 (6th Cir.). It cannot be denied that respect for the integrity of the picket line may well be the source of strength of the whole collective bargaining process in which every union member has a legitimate and protected economic interest. And any assistance by a union member to a labor organization in the collective bargaining process is for mutual aid or protection of the nonstriking unionist even though he has no immediate stake in the labor dispute.

It cannot be gainsaid that there is record evidence to support the Board's finding that Moss and Withrow refused to cross the picket line as a matter of principle. But we do not think the record affords any factual basis for the finding that Mullins' refusal was based on principle. A careful reading of the testimony reveals that his refusal was based on fear and nothing else.[1]

One who refuses to cross a picket line by reason of physical fear does not act on principle. He makes no common cause, and contributes nothing to mutual aid or protection in the collective bargaining process. We hold, therefore, that Mullins' refusal to cross the picket line was not protected activity under Section 7, and enforcement of the Board's order as to him will be denied.

■ Assuming, as we have held, that Moss and Withrow were engaged in Section 7 protected activity, Union Carbide insists that it had substantial and legitimate business justification for the discharges which outweighs any interference with Section 7 rights. Thus, it urges that no violation of Section 8(a)(1) occurred. See Robertshaw Controls Company, Acro Division v. National Labor Relations Board, 386 F.2d 377 (4th Cir.). The substantial business justification is said to be the need to discharge those employees who did not return to work by the ninth day in order to prevent such large scale defection in the construction division that continuation of normal construction work would have been impossible.

The Board did not think this position tenable, since replacements were not hired for the discharged employees. The Board took the position that since Moss and Withrow occupied the status of economic strikers they were entitled to the same consideration with respect

---

1. The Trial Examiner recognized that fear was an element in Mullins' decision when he found that "Each decided against walking through the picket line as a matter of principle and, in one case, as a matter of fear." But we find no support for the conclusion that principle was an operative factor in Mullins' refusal. Thus, Mullins testified:

"A He asked me to come back to work. And I told him no, that I couldn't cross no picket line. And he said, 'Well, there's other men crossing it and they haven't said anything to them.' And I said, 'Well, it is too dangerous to cross a picket line and I can't cross a picket line to go to work. It's too dangerous. I'm afraid to cross the picket line.' (Appendix at page 92.)
\* \* \* \* \*
"Q Well, why didn't you cross the picket lines, Mr. Mullins?
"A Well, I was afraid.
"Q Any other reason?
"A Well, that was the main reason. I was afraid. It was too dangerous.
"Q And why were you afraid?
"A Well, I was afraid somebody would beat me up or burn my house down or something like that.
"Q Have you ever crossed a picket line in the past?
"A No, sir.
"Q Have you encountered them before?
"A Sir?
"Q Had you encountered them before last summer?
"TRIAL EXAMINER: Encountered picket lines?
"MR. MURPHY: Yes.
"THE WITNESS: Well, yes. I never did cross one. If that's what you mean. I didn't quite get your question.
"Q (By Mr. Murphy) Yes. That's what I meant. Was your reason always the same as it was last summer?
"A Oh, yes. Yes. Too dangerous to cross a picket line. I've seen people beat up and everything else crossing picket lines." (Appendix at pages 98, 99.).

to discharge and replacement, i.e. they may not be discharged but may be replaced by workers hired as permanent replacements during the strike in order to continue operations. We agree. See National Labor Relations Board v. Southern Greyhound Lines, supra; National Labor Relations Board v. John S. Swift Co., 277 F.2d 641 (7th Cir.).

We have been reminded on more than one occasion that "It is the primary responsibility of the Board and not of the courts 'to strike the proper balance between the asserted business justifications and the invasion of employee rights in light of the Act and its policy.'" National Labor Relations Board v. Fleetwood Trailer Co., 389 U.S. 375, 88 S.Ct. 543, 19 L.Ed.2d 614. We cannot say that the Board has violated that responsibility by equating an employee who honors a picket line with an economic striker. It follows that Union Carbide's discharge of Moss and Withrow violated Section 8(a) (1).

The remaining defense presented to enforcement is that substantial and legitimate business considerations justified the company's refusal to rehire Moss and Withrow at the termination of the strike. Union Carbide urges that beginning in June, 1967, contractions in the work force resulted in the elimination of the jobs for legitimate economic reasons. This argument ignores the testimony of Union Carbide's own officials that any contractions occurring in the work force during 1967 were due to attrition, i.e. employees who quit, became disabled or retired were not replaced. No affirmative policy of layoffs began until January, 1968. Union Carbide is thus in the untenable position of contending that the illegal discharges in July, 1967, provided an economic justification for refusal to reinstate the employees in October, 1967. To state such a contention is to answer it. Enforcement of the Board's order is granted as to Moss and Withrow; enforcement is denied as to Mullins for reasons we have stated.

ALBERT V. BRYAN, Circuit Judge (dissenting):

To warrant reinstatement and backpay for the two non-bargaining employees the Board has, for me, "put too fine a point" upon the difference between discharge and replacement. The Board concedes, as it must, that no such sanction could be visited upon the employer had it immediately replaced employees Moss and Withrow when they failed to return to work, instead of discharging them. NLRB v. Fleetwood Trailer Co., Inc., 389 U.S. 375, 379, 88 S.Ct. 543, 19 L.Ed.2d 614 (1967); NLRB v. Mackay Radio and Telegraph Co., 304 U.S. 333, 345–346, 58 S.Ct. 904, 82 L.Ed. 1381 (1938). The mystic line drawn by the Board between the two methods of disengagement is too fine to call for the penalty put upon the Company.

The result of discharge and replacement is for the employee the same. In either separation he does not receive pay subsequently. The Court in NLRB v. Rockaway News Supply Co., Inc., 345 U.S. 71, 75, 73 S.Ct. 519, 97 L.Ed. 832 (1953) protested it could not follow the Board's differentiation:

"The distinction between discharge and replacement in this context seems to us as unrealistic and unfounded in law as the Court of Appeals found it. * * * *It is not based on any difference in effect upon the employee.* * * * Substantive rights and duties in the field of labor-management do not depend on verbal ritual reminiscent of medieval real property law." (Accent added.)

Even with the distinction honored, however, the employer is not subject to a mandate of reinstatement and backpay if the refusal to restore the employee is due to "legitimate and substantial business justifications". NLRB v. Fleetwood Trailer Co., Inc., supra, 389 U.S. 375, 379, 88 S.Ct. 543; Teamsters, Chauffeurs & Helpers Local Union No. 79, Intern. Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. NLRB, 117 U.S.App.D.C. 84,

325 F.2d 1011, 1012 (1963), cert. denied 377 U.S. 905, 84 S.Ct. 1165, 12 L.Ed.2d 176 (1964). While the employer *is* obliged to establish the justifications, the evidence in this case renders the Board's contrary finding without substantial support. See Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

To begin with, the charging employees have not to this day—more than three years—been replaced by outsiders. This irrefutably proves their positions were eliminated or undertaken by others within the Company. Cf. NLRB v. Fleetwood Trailer Co., Inc., supra. Again, in NLRB v. Rockaway News Supply Co., Inc., supra, 345 U.S. 71, 75, 73 S.Ct. 519, 522, the Court observed, "[T]here is no finding that he was not replaced either by a new employee or *by transfer of duties* to some non-objecting employee, as would appear necessary if the respondent [employer] were to maintain the operation." Thus the Court recognized the exception from liability if the prior position was absorbed, as here, without the importation of a new employee.

I would not enforce the order for backpay and reinstatement.

### ORDER

PER CURIAM.

Upon consideration of the petition of the National Labor Relations Board for rehearing and of the suggestion for a rehearing en banc;

Now, therefore, with the concurrence and approval of the other members of the panel, and in the absence of a request for a poll of the entire court as provided by Appellate Rule 35(b);

It is adjudged and ordered that the National Labor Relations Board's petition for a rehearing is denied.

Upon consideration of Union Carbide Corporation's petition for a rehearing addressed to the panel;

ALBERT V. BRYAN, Circuit Judge (dissenting on denial of rehearing).

I see no ground for a reconsideration of Mullins' discharge. It was found not to be an unfair labor practice, and properly so, I think.

To the refusal of the Court to grant the respondent a rehearing as to Moss and Withrow, I renew the dissent I noted to the first opinion in this case. I now again express disapproval of the reinstatement and backpay allowed these two employees.