**NATIONAL FABRICATORS, INC.,
Petitioner, Cross–Respondent,**

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent,
Cross–Petitioner.**

No. 89–4718.

United States Court of Appeals,
Fifth Circuit.

June 19, 1990.

this action as a petition for coram nobis relief, the petition may be treated as one for coram nobis relief.

Murphy J. Foster, III, Breazeale, Sachse & Wilson, Baton Rouge, La., for petitioner, cross-respondent.

Paul J. Spielberg and Aileen Armstrong, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., for respondent, cross-petitioner.

Joseph G. Norton, Acting Director, Labor Relations Bd., New Orleans, La., for other interested parties.

Before THORNBERRY, GEE, and BARKSDALE, Circuit Judges.

THORNBERRY, Circuit Judge:

This case involves a petition for review and cross-petition for enforcement of an order of the National Labor Relations Board (Board) entered against National Fabricators, Inc. (National Fabricators) after a hearing before an Administrative Law Judge (ALJ). Although this is a close case, we find that the Board's order is reasonable and supported by substantial evidence from the record, and therefore we enforce the order.

## Facts and Procedural History

National Fabricators is a nonunion fabricator of pipes. Some of its employees are members of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL–CIO, Local 198 (union). On October 7, 1987, National Fabricators was facing a work slowdown and had legitimate economic reasons for laying off seven employees. The unfair labor practices charged in this case arose out of National Fabricators' selection of union employees for the layoff.

The facts underlying the alleged unfair labor practices are essentially undisputed. In a letter dated December 15, 1986, the union had given its members permission to work for nonunion employers such as National Fabricators. On September 15, 1987, however, the union wrote its local members that its previous letter was erroneous and that the union's constitution prohibited union members from working for nonunion employers. The letter stated that the members had 30 days to quit their nonunion jobs or be subject to internal union discipline, including fines, suspension, and/or expulsion.

Numerous discussions arose among employees and supervisors regarding the letter, including whether the union employees would quit National Fabricators or quit the union. Since the union threatened action within 30 days, it was anticipated that a picket line would be established by October 15, 1987, and there were discussions as to whether union employees would honor the picket line. Oscar LaFleur, part owner and supervisor of National Fabricators, was also a union member. Along with foreman Reid Jury, a fellow union member, LaFleur was in charge of selecting which employees to lay off in response to the imminent work slowdown. The standard practice at National Fabricators was to lay off the least senior employees. But because of the union letter, LaFleur decided to ask the union employees whether they intended to stay at National Fabricators or quit the union.

After consulting his employees, LaFleur decided to lay off seven union members even though there were less senior nonunion employees. LaFleur testified that he laid off the union members because he expected that they were going to quit on October 15 anyway. But the ALJ and the Board found that these employees were laid off because National Fabricators feared that they would honor the expected picket line. National Fabricators concedes that it was motivated to select union employees in part because it feared they would not cross the expected picket line.

In fact, no picket line ever materialized, and three weeks after they were laid off, business improved at National Fabricators and all seven union employees were rehired. Since that time, National Fabricators has hired other union employees as well.

The union filed unfair labor practice charges against National Fabricators arguing that it had illegally laid off the union employees in violation of sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) and (3).[1] The ALJ agreed and held that the employees' assertions that they would honor a picket line was a protected activity, and that a discharge for that activity violated sections 8(a)(1) and 8(a)(3). Although there was no finding of antiunion animus, the Board affirmed and found that National Fabricators' conduct was inherently destructive of employee rights. It further found that National Fabricators failed to offer legitimate

---

1. Sections 8(a)(1) and 8(a)(3) state in relevant part:

   (a) It shall be an unfair labor practice for an employer—
   (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;
   
   \* \* \* \* \* \*
   
   (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization. . . .

   29 U.S.C. §§ 158(a)(1) and (3). "Although §§ 8(a)(1) and (a)(3) are not coterminous, a violation of § 8(a)(3) constitutes a derivative violation of 8(a)(1)." *Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 698 n. 4, 103 S.Ct. 1467, 1472 n. 4, 75 L.Ed.2d 387 (1983).

business reasons for laying off those employees who would honor a picket line. National Fabricators brought this appeal.

## Discussion

■ Given the Board's expertise in applying the general provisions of the Act to the complexities of industrial life, our review is narrow. *NLRB v. Erie Resistor Corp.*, 373 U.S. 221, 236, 83 S.Ct. 1139, 1150, 10 L.Ed.2d 308 (1963). In cases where we must review the legal effect of a given set of facts, the Board's determination must be upheld "if reasonable, consistent with the Act, and based on findings supported by substantial evidence." *Huck Mfg. Co. v. NLRB*, 693 F.2d 1176, 1181 (5th Cir.1982); *NLRB v. L.B. Priester & Son, Inc.*, 669 F.2d 355, 359 (5th Cir.1982).

■ Although there was no finding of antiunion animus, the Board found that National Fabricators' decision to lay off those employees who were expected to honor a picket line was inherently destructive of important employee rights. If an employer's discriminatory conduct is "inherently destructive," it carries with it a strong inference of impermissible motive, and no proof of antiunion animus is required. *NLRB v. Great Dane Trailers, Inc.*, 388 U.S. 26, 34, 87 S.Ct. 1792, 1798, 18 L.Ed.2d 1027 (1967). "In such a situation, even if an employer comes forward with a nondiscriminatory explanation for its actions, the Board 'may nevertheless draw an inference of improper motive from the conduct itself and exercise its duty to strike the proper balance between the asserted business justification and the invasion of employee rights in light of the Act and its policy.'" *Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 701, 103 S.Ct. 1467, 1473, 75 L.Ed.2d 387 (1983) (quoting *Great Dane*, 388 U.S. at 33–34, 87 S.Ct. at 1797). On the other hand, if the adverse effect on employee rights is "comparatively slight," and the employer has come forward with legitimate and substantial business justifications, then proof of antiunion animus is required. *Id.*

There are two categories of conduct which have been held to be inherently destructive of important employee rights. One type of such conduct is that which creates "visible and continuing obstacles to the future exercise of employee rights." *NLRB v. Haberman Constr. Co.*, 641 F.2d 351, 359 (5th Cir.1981) (en banc). The second type of inherently destructive conduct is that which "directly and unambiguously penalizes or deters protected activity." *Id.*

In holding that National Fabricators' conduct falls within the second category, the Board found that "the criterion used by [National Fabricators] to select employees for layoff—disfavoring employees who were likely to engage in protected union activities—is the kind of coercive discrimination that naturally tends to discourage unionization and other concerted activity." To avoid being laid off, union employees were left with little choice but to agree in advance to resist the union's probable appeal to engage in picketing. In fact, resigning from union membership could be perceived as the only alternative to avoid the advance layoff. The Board concluded that "[s]uch direct coercion of employees to abandon contemplated support for union activity would surely pose a lingering hindrance to future organizational activity."

■ We defer to the Board's conclusion that National Fabricators' conduct adversely affects protected employee rights. Section 8(a)(3) not only proscribes discrimination that affects union membership, it also makes unlawful discrimination against employees who participate in concerted activities protected by section 7 of the Act. *Metropolitan Edison*, 460 U.S. at 703, 103 S.Ct. at 1474. Peaceful picketing and the honoring of a picket line fall within the activities protected by section 7, *e.g.*, *NLRB v. Schwab Foods, Inc.*, 858 F.2d 1285, 1289 (7th Cir.1988); *NLRB v. Southern Greyhound Lines*, 426 F.2d 1299, 1301 (5th Cir.1970), and selecting for layoff those employees who are expected to engage in those protected activities undoubtedly discourages such activity.

■ Although National Fabricators points out that it may hire permanent replacements for its striking workers, *NLRB*

*v. Mackay Radio & Tel. Co.*, 304 U.S. 333, 345, 58 S.Ct. 904, 910, 82 L.Ed. 1381 (1938), it may not discriminate against certain employees merely because it anticipates that they will honor a picket line or otherwise engage in protected activity. Permitting such conduct would allow an employer to systematically discriminate against all union employees on the grounds that they are more likely to engage in protected activities than nonunion employees. We also reject National Fabricators' argument that its conduct could not be inherently destructive because the seven employees were rehired within three weeks and because additional union employees have since been hired. First, although the layoff only lasted for a short time, this was fortuitous, as the layoff was indefinite and could have lasted much longer. Second, although National Fabricators has hired more union employees since the layoff, the Board is only required to demonstrate that the employer's conduct adversely affected protected employee rights, *see Metropolitan Edison*, 460 U.S. at 703, 103 S.Ct. at 1474; it need not demonstrate that the labor activity was actually hindered by the illegal employer activity.

■ Determining that National Fabricators' conduct adversely affected protected employee rights does not end the inquiry. If the employer offers a legitimate explanation for its conduct, the Board must "'strike the proper balance between the asserted business justifications and the invasion of employee rights.'" *Id.* (quoting *Great Dane*, 388 U.S. at 33–34, 87 S.Ct. at 1797). The Board determined that National Fabricators failed to offer a compelling reason for selecting for economic layoff those employees expected to honor a picket line. If the union established a picket line, and the union employees honored that line, National Fabricators remained free to hire replacements or call back those laid off under a neutral standard. The ALJ found that LaFleur's own testimony revealed the true justification for the layoff: "[I]f you're going to string out for two or three weeks and carry these people on your payroll and invest money in them, if they're going to quit anyhow a week later, why in the hell are you going to put money into them, lay them off." We agree with the Board that this business justification was neither legitimate nor substantial.

Accordingly, we conclude that the Board's finding of a violation of sections 8(a)(1) and (3) is supported by the substantial evidence on the record as a whole and has a reasonable basis. Therefore, the Board's order is ENFORCED.