HOSPITAL AND INSTITUTIONAL WORKERS UNION LOCAL 250, SEIU, AFL–CIO, Petitioner-Appellant,

v.

MARSHAL HALE MEMORIAL HOSPI-TAL, Respondent-Appellee.

No. 78–2347.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 12, 1980.

Decided June 1, 1981.

David A. Rosenfeld, Van Bourg, Allen, Weinberg & Roger, San Francisco, Cal., for petitioner-appellant.

Alan S. Levins, Littler, Mendelson, Fastiff & Tichy, San Francisco, Cal., argued, for respondent-appellee; Arthur Mendelson, Maureen E. McClain & Patrica K. Gillette, Littler, Mendelson, Fastiff & Tichy, San Francisco, Cal., on brief.

Before WRIGHT, CHOY and ALARCON, Circuit Judges.

CHOY, Circuit Judge:

The Hospital and Institutional Workers Union Local 250 (Union) appeals from a summary judgment denying its petition to compel arbitration of a dispute arising under a collective bargaining agreement with Marshal Hale Memorial Hospital (Hospital). Because we find that the collective bargaining agreement committed resolution of such disputes to arbitration, we reverse.

## I. *Facts*

The dispute underlying this case concerns an alleged altercation between representatives of the Union and the Hospital. The collective bargaining agreement between the Hospital and the Union provides that a duly authorized representative of the Union be permitted reasonable access to the Hospital for the purpose of monitoring workers' complaints and the Hospital's compliance with the agreement.[1] On April 25, 1977, the Union's designated representative, Felix Smith, was scheduled to meet with Dennis Powell, Vice-President in charge of personnel for the Hospital. When Smith arrived at the appointed time, Powell declined to meet with him because Smith was unrepentant about having violated hospital rules against distributing literature in work areas. Smith refused to leave Powell's office and allegedly assaulted Powell when denied use of the telephone, causing an injury which required medical treatment. Powell retreated from the office and secured the assistance of a policeman who persuaded Smith to leave.

Subsequent actions revolved around the Hospital's desire to avoid further contact with Smith. The Hospital notified the Union that it would no longer deal with Smith, but that it would meet with any other representative designated by the Union. On July 15, 1977, the Hospital filed an unfair labor practice charge, alleging that Smith's actions had "restrained and coerced" the Hospital in the selection of its collective bargaining representative in violation of Section 8(b)(1)(B) of the National Labor Relations Act, 29 U.S.C. § 158. The parties met on August 8, 1977 to discuss the dispute, but neither that meeting nor an exchange of proposals for extra-contractual settlement in lieu of NLRB action resolved the issue. On September 29, 1977, the Union filed an unfair labor practice charge, alleging that the Hospital's refusal to deal with Smith interferred with the employees' right to representation by an agent of their choice in violation of Section 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158.

The NLRB's Regional Director conducted investigations into both unfair labor practice charges and on September 14, 1977 issued a complaint against the Union charging that Smith's actions constituted a violation of Section 8(b)(1)(B) of the National Labor Relations Act by restraining or coercing the Hospital in the selection of its representative. After investigating the Union's charges concerning the Hospital's refusal to meet with Smith, however, the

1. Article VIII, § 1, of the collective bargaining agreement reads as follows:

Section 1. Business Representatives' Visits:
   A duly authorized representative of the Union shall be permitted to enter the hospitals at reasonable times for the purpose of observing whether this Agreement is being observed or to check upon complaints of employees, provided:
   (a) This privilege is exercised reasonably;
   (b) The Union representative advises the Administrator of the hospital or the Administrator's designee immediately upon entering a hospital;
   (c) The Union representative in advance advises the Administrator of the hospital or the Administrator's designee as to which departments or areas he or she wishes to visit,

and confines the visit to such departments or areas as agreed upon;
   (d) The Union representative confers with employees, including shop stewards, only upon their own free time and in public areas within the hospital, such as cafeterias or coffee shops, or in designated non-work areas;
   (e) The Union representative does not interfere with the work of any employee.
Paragraph (d) above does not prevent a Union representative from conferring with an employee and his or her supervisor or a hospital representative on hospital time in connection with a complaint or problem concerning the employee.
Paragraph (c) above is to be administered in good faith and in a reasonable manner by the hospitals.

Regional Director refused to issue a complaint, concluding in a letter dated October 14, 1977 that the "limited refusal to meet" was privileged. These two actions, the issuance of a complaint against the Union and a refusal to issue a complaint against the Hospital, substantially concluded the NLRB's role in the case. The complaint against the Union was eventually resolved on February 14, 1978 by a settlement agreement approved by the Regional Director wherein the Union agreed to refrain from assaulting representatives of the Hospital. The Union did not appeal the Regional Director's refusal to issue a complaint on its charge.

On October 12, 1977, the Union demanded arbitration of the grievance and on November 16, 1977 filed in California state court a petition to compel arbitration. The case was removed to the United States District Court for the Northern District of California on November 23, 1977. Upon receiving motions for summary judgment from both parties, Judge Poole granted the Hospital's motion on April 28, 1978, without elaborating the reasons for his decision.

## II. *Analysis*

The issues presented on appeal are: 1) whether the underlying grievance is moot; 2) whether the Union lost the right to demand arbitration by failing to comply with the agreement's grievance procedure; 3) whether the NLRB Regional Director's rulings conclusively resolved the issues so as to foreclose arbitration. As none of the material facts is in dispute, review of the grant of summary judgment is limited to a determination whether the trial judge correctly applied the law to those facts. Fed.R.Civ.P. 56(c). We conclude that he did not.

### A. *Mootness*

█ The Hospital argues that the grievance is moot because the Union officially reassigned Smith to another hospital and

replaced him at Marshal Hale with another representative on November 14, 1977. That fact alone, however, does not moot the issue. The Union continues to assert its right to designate Smith as its representative to Marshal Hale and seeks damages for the denial of that right. The agreement which settled the Hospital's unfair labor practice charge obliged the Union to refrain from assaulting or verbally abusing representatives of the Hospital; it did not preclude Smith's reassignment to the Hospital so long as he complied with those restrictions.

In *Local 77, International Brotherhood of Electrical Workers v. Puget Sound Power & Light Co.*, 506 F.2d 523 (9th Cir. 1974), *cert. denied*, 420 U.S. 992, 95 S.Ct. 1429, 43 L.Ed.2d 674 (1975), this court refused to find a request for arbitration moot even though the employee who initiated the grievance was no longer interested in the job he had been refused. The union retained an interest in challenging the underlying company policy and "an issue remains 'live' unless subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." 506 F.2d at 524, *quoting Pacific Maritime Association v. ILWU*, 454 F.2d 262, 263 (9th Cir. 1971); *accord, Seay v. McDonnell Douglas Corp.*, 533 F.2d 1126, 1130 (9th Cir. 1976). Here, the "allegedly wrongful behavior" is the continuing exclusion of the Union's chosen representative from the Hospital in alleged violation of the Union's rights under the collective bargaining agreement. The issue is not moot.

### B. *Procedural Arbitrability*

While apparently conceding that the substance of the dispute is arbitrable under the collective bargaining agreement,[2] the Hospital argues that the Union is foreclosed from demanding arbitration by its failure to comply with the contractual grievance procedure. That procedure contemplates

---

**2.** Article X, § 1, of the collective bargaining agreement specifies that the grievance procedure culminating in arbitration applies where "any employee or the Union has a grievance or complaint concerning the interpretation or application of the terms of this Agreement . . . ." The dispute here centers upon interpretation of Article VIII, § 1, of the Agreement. *See supra* note 1. The parties clearly contemplated resolving such disputes by arbitration.

that the Union or employee will first confer with the Hospital's representative in a phase called "Step 1." If Step 1 does not lead to settlement, the Union in Step 2 is to submit a written grievance or complaint to the Hospital, followed by discussions between Hospital and Union representatives. The Hospital must conclude Step 2 by indicating in writing a grant or denial of the grievance. If the dispute remains unresolved after Step 2, either party may request arbitration as Step 3.

A further provision, designated "Time Limit," states that

> No grievance or complaint shall be considered unless it has first been presented in writing in Step 2 within thirty (30) days of the alleged occurrence thereof. . . . No grievance shall be submitted to arbitration unless the demand for arbitration is presented by a party in writing to the other party within thirty (30) calendar days of the other party's final written response in Step 2 of the grievance procedure.

Master Agreement, Article X, § 4. The record reveals no conference between the Union and the Hospital before August 8, 1977, more than three months after the altercation, and no written complaint by the Union before September 22, 1977. The Hospital thus argues that arbitration is foreclosed by the terms of the contract. The Union responds that communications between the parties constituted substantial compliance with the initial steps of the grievance procedure and that the Hospital's August 15, 1977 offer to arbitrate "extracontractually" demonstrated a willingness to waive the contractual time limits.

In a case where alleged non-compliance with a similar multiple-step procedure was urged as a bar to arbitration, the Supreme Court ruled that questions of procedural arbitrability generally should be resolved by the arbitrator. *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 555–59, 84 S.Ct. 909, 917–19, 11 L.Ed.2d 898 (1964). "Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." 376 U.S. at 557, 84 S.Ct. at 917. *See Operating Engineers Local 150 v. Flair Builders, Inc.*, 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972). The procedural questions here spring from the responses of both parties to the altercation between Smith and Powell and the Hospital's continuing refusal to deal with Smith. The contract interpretation necessary to resolve these questions is properly left to the arbitrator.

### C. *Arbitrator—NLRB Conflict*

The Hospital argues that arbitration is foreclosed by the NLRB Regional Director's disposition of the unfair labor practice charges brought by the Union and the Hospital. The Regional Director issued a complaint against the Union for restraining and coercing the Hospital's representative; the charge was settled with the approval of the Regional Director by the Union's agreement to refrain from such conduct. The Regional Director refused to issue a complaint against the Hospital on the ground that its "limited refusal to meet" with Smith was privileged because of Smith's unlawful activity. The Hospital argues that those actions constituted an NLRB resolution of the issue for which arbitration is sought, thereby posing a conflict between the NLRB and any arbitrator's decision favorable to the Union, a conflict in which the NLRB determination would control.

It is clear that where the NLRB and an arbitrator's award are in direct conflict, the NLRB decision must control. *Carey v. Westinghouse Electric Corp.*, 375 U.S. 261, 272, 84 S.Ct. 401, 409, 11 L.Ed.2d 320 (1964). We do not agree, however, that such a conflict exists in this case. First, there is no logical inconsistency between the Regional Director's finding that the Hospital's conduct was privileged under the labor laws and a possible arbitrator's decision that that conduct violated the collective bargaining agreement. That fact distinguishes such cases as *Cannery Warehousemen Local 748 v. Haig Berberian, Inc.*,

623 F.2d 77 (9th Cir. 1980), where the arbitrator found that a newly-constructed facility was covered by an existing collective bargaining agreement and the NLRB determined that it was not. *Id.* at 78–79.

Second, any conflict between the NLRB and an arbitrator is necessarily speculative when the arbitrator has yet to rule. The Fifth Circuit addressed this issue in *Lodge 37, IAM v. Boland Marine & Mfg. Co.*, 591 F.2d 1184 (5th Cir. 1979), in which it held that a Regional Director's refusal to issue a complaint did not preclude arbitration of the issue: "it is not for this Court to look at what the outcome of arbitration of [the Union] grievance might be in view of the NLRB's decision; our duty is simply to look at the labor agreement and determine whether this is the sort of question which is covered by the arbitration." *Id.* at 1187. *See International Union of Electrical, Radio & Machine Workers v. General Electric Co.*, 407 F.2d 253 (2d Cir. 1968), *cert. denied*, 394 U.S. 904, 89 S.Ct. 1742, 23 L.Ed.2d 217 (1969); *Luckenbach Overseas Corp. v. Curran*, 398 F.2d 403 (2d Cir. 1968). Conflicts between the arbitrator and the NLRB can be resolved when they become manifest in an action to enforce the award. The mere possibility of conflict, however, is no barrier to arbitration. *Carey v. Westinghouse Electric Corp.*, 375 U.S. at 272, 84 S.Ct. at 409; *cf. Waggoner v. R. McGray, Inc.*, 607 F.2d 1229, 1236 (9th Cir. 1979) (district court may enforce arbitration award despite potential conflict with NLRB).

### III. *Conclusion*

Because we find the dispute to be within the scope of issues which the parties agreed to arbitrate, we reverse the district court and direct that the grievance be submitted to arbitration. In so ruling, we take no position as to the merits of the dispute; any such judicial determination must await an action to enforce the arbitrator's award.

REVERSED and REMANDED for further proceedings consistent with this opinion.