UNITED FOOD AND COMMERCIAL
WORKERS UNION, LOCAL 400,
Plaintiff–Appellee,

v.

SHOPPERS FOOD WAREHOUSE
CORP., Defendant–Appellant.

No. 93–1727.

United States Court of Appeals,
Fourth Circuit.

Argued May 9, 1994.

Decided Sept. 20, 1994.

**ARGUED:** Edward Joseph Gutman, Blum, Yumkas, Mailman, Gutman & Denick, P.A., Baltimore, MD, for appellant. Carey Robert Butsavage, Butsavage & Associates, P.C., Washington, DC, for appellee. **ON BRIEF:** Marc A. Stefan, Butsavage & Associates, P.C., Washington, DC, for appellee.

Before WILLIAMS, Circuit Judge, PHILLIPS, Senior Circuit Judge, and ERWIN, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.

Affirmed by published opinion. Senior Circuit Judge PHILLIPS wrote the opinion, in which Judge WILLIAMS and Senior District Judge ERWIN joined.

## OPINION

PHILLIPS, Senior Circuit Judge:

Shoppers Food Warehouse Corp. (Shoppers) appeals the district court's grant of summary judgment to the United Food and Commercial Workers Union, Local 400 (the Union) in the Union's action to enforce the arbitration provision of the parties' collective bargaining agreement. The district court's decision was clearly correct at the time rendered. The more serious question is whether a subsequent determination by the National Labor Relations Board (NLRB or Board) to dismiss the Union's related unfair labor practice claim must preclude arbitra-

tion. Concluding that it should not, we affirm.

## I

Shoppers owns and operates a supermarket chain with stores in Virginia, Maryland and the District of Columbia. In 1989, Shoppers and the Union entered into a collective bargaining agreement (CBA) covering the wages, hours, and terms and conditions of employment for Shoppers' non-supervisory employees in its several stores. Two provisions of the CBA, quoted in pertinent part, are relevant to this case:

ARTICLE 2.2 The Employer further agrees that if the Employer should establish a new food store, or stores, within the territories described in Article II, paragraph 2.1, this Agreement shall apply to such new store or stores.

ARTICLE 19.1 In the event a grievance or dispute arises under the terms and during the life of this Agreement that cannot be adjusted by the Union and the Employer within a reasonable time, either party may request that such grievance or dispute be submitted to arbitration.

In October 1992, Shoppers opened a new place of business in Chantilly, Virginia called Total Beverage. In addition to beer and wine, the store sold an assortment of waters, cheeses, snacks and paper goods. Prior to its opening, the Union informed Shoppers by letter that, "[i]t is our position that the agreement will apply to this new specialty store when it opens." Shoppers responded that because Total Beverage was not a "food store" under Article 2.2 "this new business enterprise will have no obligation to recognize or bargain with Local 400." The Union then reasserted its belief that Total Beverage was covered by the agreement, stating in a follow-up letter that: "Since there appears to be a real disagreement over this contract

clause, the Union hereby ... demands immediate arbitration over the issues." Shoppers refused to submit to arbitration.

Thereafter, the Union brought this action under § 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a) (1988)[1] seeking an order compelling Shoppers to participate in arbitration.[2] While this action was pending on cross-motions for summary judgment, the Union filed an unfair labor practice charge against Shoppers alleging that the company violated Sections 8(a)(1) and (5) of the National Labor Relations Act (NLRA) by declining to recognize the CBA's coverage of the Chantilly operation. In turn, while the unfair labor practice charge was pending before the NLRB, the district court granted the Union's motion for summary judgment and ordered arbitration.

Initially noting the law's strong preference for arbitration, see AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), the district court relied essentially on two points in finding arbitration compelled here: 1) the arbitration clause, Article 19.1, was a broad one within which the dispute over Article 2.2 "clearly falls"; and 2) a 1979 district court decision, Retail Store Employees Union v. A & P, 480 F.Supp. 88 (D.Md.1979) had held that the meaning and application of such new store clauses as that here in issue are arbitrable under a comparable arbitration clause.

In reaching its conclusion, the court also addressed Shoppers' two main arguments in opposition to arbitration: first, that Shoppers' sale of Total Beverage to the Dart Corporation negated any liability it may have incurred by violating the agreement; and second, that an arbitrator would lack legal authority to act in the matter because the Union had failed to demonstrate that it rep-

---

1. Section 301(a) states: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

2. At the same time the Union filed this action, it also moved for a temporary restraining order and preliminary injunction seeking to block Shoppers' sale of Total Beverage to the Dart Corporation. These motions were denied. According to the Union, the owner of Dart, Herbert Haft, also owns a controlling interest in Shoppers.

resents a majority of Total Beverage employees.

The court found the first argument unpersuasive based upon cases requiring arbitration even after a collective bargaining agreement had expired, or the place of employment had been closed. The court rejected Shoppers' second argument by noting that the representation issue itself could be decided by the arbitrator. Shoppers then filed notice of the appeal we now consider.

Subsequent to the district court's decision, and while Shoppers' appeal was pending before us, the Union's unfair labor practice charge was dismissed by the NLRB regional office.

The Board found no evidence that Shoppers opened Total Beverage in order to evade the collective bargaining agreement. It went on to hold that the employees of Total Beverage are not an "accretion" to the Shoppers Food Warehouse bargaining unit because there was no interchange of non-supervisory employees. Finally, the Board held that even if Total Beverage constituted a "new store" under the agreement, "the Union must show that it represents a majority of the employees at the Total Beverage Store in order for it to be covered under the collective bargaining agreement." Because the Union had made no such showing, the NLRB held its charge must be dismissed. The Union sought review by the NLRB's Office of Appeals which affirmed the regional board. Neither NLRB decision took note of the § 301 action, or the district court's ruling in that regard.

## II

The first issue for us is whether the arbitration clause covers the dispute over whether Total Beverage constitutes a "new food store".

If it does, there is then the issue whether it nevertheless should not be enforced because of the NLRB's actions with regard to this dispute.

3. For an example of a narrower clause, *see Int'l Ass'n of Machinists, Lodge No. 1000 v. General*

## A

On the first issue, there is really little room for dispute. The arbitration clause at issue here is a relatively broad one: "In the event a grievance or dispute arises under ... the Agreement ... either party may request ... arbitration." [3] The agreement further assumes that if one side has a grievance, the other side will expeditiously and automatically participate in the arbitration process:

Either party shall, in writing, notify the other of the need for the appointment of a Board of Arbitration ... Within three days after receipt of such notice, the other party *shall* designate, in writing, the name of its representatives on said Board.

(emphasis added).

In addition to the arbitration clause's relatively broad wording, the scales are further tipped by the longstanding judicial deference to arbitration. As noted in the Supreme Court's unanimous opinion in *AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986):

[I]t has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

475 U.S. at 650, 106 S.Ct. at 1419 (internal citations omitted). This "presumption" reflects over thirty years of judicial enforcement of arbitration clauses. *See e.g. United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *Carey v. Westinghouse Electric Corp.,* 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964); *AT & T.* Such enforcement is, in turn, a recognition of "the central role of arbitration in our 'system of industrial self-government.'" *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 219, 105 S.Ct. 1904,

*Electric Co.,* 865 F.2d 902, 904 (7th Cir.1989).

1915, 85 L.Ed.2d 206 (1985). *See also Local 637, IBEW v. Davis H. Elliot Co.*, 13 F.3d 129, 132 (4th Cir.1993) ("it is [ ] firmly established that courts will broadly construe contractual provisions for arbitration because of the well-recognized benefits of peaceful resolution of labor disputes through arbitration").[4]

It should be noted that, as in this case, the decision is often not just between arbitration and no arbitration but rather between arbitration and a potential, or prior, resolution by the NLRB. *See e.g. Smith v. Evening News Ass'n*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). This issue repeatedly crops up because of the overlapping jurisdiction created when the same incident or dispute leads to an unfair labor practices claim before the NLRB and a § 301 action in federal court. We address this issue further below, noting now only that courts generally have allowed arbitration to proceed unless a dispute is so "primarily representational," that it falls solely within the Board's jurisdiction. *See Amalgamated Cloth. & Text. Wkrs. v. Facetglas, Inc.*, 845 F.2d 1250, 1252 (4th Cir. 1988).

Our decisions faithfully follow those precedents on the points at issue here. *See e.g. Cumberland Typographical Union No. 244 v. Times & Alleganian Co.*, 943 F.2d 401, 404 (4th Cir.1991) (even though a collective bargaining agreement had expired, a wage dispute arising under it must be arbitrated in furtherance of *AT & T*'s insistence that "except for matters specifically excluded from arbitration in the collective bargaining agreement, all questions on which the parties disagree must be submitted to arbitration"); *United Bhd. of Carpenters, Local 1694 v. W.T. Galliher & Bros. Inc.*, 787 F.2d 953, 954 (4th Cir.1986) (although dispute "arguably representational," district court properly ordered arbitration under section 301); *see also Retail Store Employees Union, Local 400 v. A & P*, 480 F.Supp. 88 (D.Md.1979) ("new

store" dispute ordered to arbitration despite existence of representational issue).

■ An important corollary to the "presumption" is that the judicial function is merely to consider whether to enforce the arbitration clause, not to assess the relative merits of the underlying dispute. "[E]ven if it appears to the court to be frivolous, the union's claim that the employer has violated the collective bargaining agreement is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator." *AT & T*, 475 U.S. at 649–50, 106 S.Ct. at 1419. *See also Lever Bros. Co. v. Int'l Chemical Wkrs. Union*, 554 F.2d 115 (4th Cir.1976).

Thus, both the text of the agreement, and the relevant precedents confirm the district court's conclusion that the arbitration clause covers the dispute over the "new food store" clause's application to the Chantilly store.

**B**

■ Normally, having decided that the agreement anticipated arbitration over the dispute at issue, and that the dispute was not so "primarily representational" as to require deferral to the NLRB, our inquiry would end. The arbitral process would ensue, with the ultimate decision subject to review, albeit limited, by the court. *See e.g. United Paperworkers Int'l v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987).

However, while this appeal was pending, the NLRB ruled that the refusal of Shoppers to apply its collective bargaining agreement with the Union to the Total Beverage employees did not constitute an unfair labor practice. The Board's resolution of this statutory question is closely intertwined with the underlying facts and issues in the present controversy. Thus, we must address the question whether it is now inappropriate to enforce the arbitration clause given that the

---

4. Of course, no matter how strong the presumption in its favor, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Livadas v. Bradshaw*, —— U.S. ——, —— n. 17, 114 S.Ct. 2068, 2078 n. 17, 129 L.Ed.2d 93 (1994), quoting *Steelworkers v. Warri-*

*or & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). *See also AT & T*, 475 U.S. at 648–49, 106 S.Ct. at 1418 ("arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration."); *Local 637, IBEW*, 13 F.3d at 132.

arbitrator's future ruling may conflict with the NLRB's findings.

While this circuit has not faced this specific question, at least three others have. In all three cases, the courts of appeal have found in favor of arbitration, notwithstanding the prior NLRB decision. *Truck Drivers Local 807 v. Regional Import & Export*, 944 F.2d 1037 (2nd Cir.1991); *Hosp. & Inst. Workers v. Marshal Hale Mem. Hosp.*, 647 F.2d 38 (9th Cir.1981); *Crescent City Lodge No. 37 v. Boland Marine & Mfg. Co.*, 591 F.2d 1184 (5th Cir.1979).[5]

Two of the decisions are directly analogous to the instant case. In both *Marshal Hale* and *Boland Marine*, the respective unions had filed unfair labor practices charges with the NLRB and in each the charges were dismissed on the merits. At the same time, the unions had filed § 301 actions seeking to compel arbitration of the dispute. In both cases the courts of appeal held that arbitration was appropriate, and that the prior determination by the NLRB should not preclude a subsequent order to arbitrate.

The rationale, common to all three cases, is that until an arbitrator has ruled, there is not a direct and immediate conflict. And in the absence of such a conflict, the arbitration clause should be enforced. *See Truck Drivers Local 807*, 944 F.2d at 1047 ("The mere possibility that the eventual arbitration award *may* conflict with the Board's ruling is not a cognizable basis for refusing to compel arbitration"); *Marshal Hale*, 647 F.2d at 42 ("[A]ny conflict between the NLRB and an arbitrator is necessarily speculative when the arbitrator has yet to rule.... Conflicts between the arbitrator and the NLRB can be resolved when they become manifest in an action to enforce the award. The mere possibility of conflict, however, is no barrier to arbitration"); *Boland Marine*, 591 F.2d at 1187 ("It is not for this Court to look at what the outcome of arbitration of [the Union]'s

grievance might be in view of the NLRB's decision; our duty is simply to look at the labor agreement and determine whether this is the sort of question which is covered by the arbitration"). As the Ninth Circuit noted in *Marshal Hale*, if ultimately there is a conflict between an arbitrator's ruling and the NLRB's disposition, the court can at that point, settle the dispute. 647 F.2d at 42.

In this appeal, Shoppers has contended that the arbitration clause should not be enforced because the arbitrator's decision may conflict with either the NLRB's dismissal of the unfair labor practices charge or general NLRB policy requiring a showing of majority status before after-acquired store clauses are enforced. The Union, in turn, argues that enforcement is appropriate because any such conflict is only speculative at this point.

We agree with the Union. There are possible outcomes of the underlying dispute an arbitrator could reach that would not conflict with either NLRB policy or its specific determination here. We therefore conclude that the NLRB's dismissal of the Union's unfair labor practices charge is not grounds for reversing the district court's decision enforcing the arbitration clause.[6]

### III

For the foregoing reasons, we conclude that the district court properly ruled that the parties' CBA required arbitration of the "new store" dispute and that the NLRB's subsequent dismissal of the Union's unfair labor practice claim does not require a different result. The judgment of the district court ordering arbitration is therefore

***AFFIRMED.***

---

5. *See also, Luckenbach Overseas Corp. v. Curran*, 398 F.2d 403 (2nd Cir.1968); *Int'l Union of Electrical, Radio & Machine Workers v. G.E.*, 407 F.2d 253 (2nd Cir.1968).

6. We are re-enforced in our decision by the fact that the NLRB has neither sought by intervention to object to arbitration in order to avoid possible conflict with its decision, *see General Warehousemen v. Standard Brands*, 560 F.2d 700, 705 (5th Cir.1977); nor given any explanation of its decision not to defer to the potential arbitration, *see Roadway Exp., Inc. v. N.L.R.B.*, 647 F.2d 415 (4th Cir.1981).